**Walter CARTER, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant—Appellee.**

**No. 02–15652.**
**D.C. CV–00–01498–PGR.**

United States Court of Appeals,
Ninth Circuit.

Submitted* Feb. 12, 2003.

Decided Feb. 21, 2003.

---

* The Panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App.P. 34(a).

Before SILVERMAN and GOULD, Circuit Judges, and WEINER, District Judge.\*\*

MEMORANDUM\*\*\*

Walter Carter appeals the district court's entry of summary judgment in favor of the Commissioner of Social Security in Carter's action for disability insurance benefits. The Administrative Law Judge (ALJ) determined that Carter was not disabled because he retained the residual functional capacity to perform a limited range of sedentary work. We reverse and remand for further proceedings.

■ The ALJ abused his discretion when he declined to issue an interrogatory requested by Carter to the agency's examining physician. The interrogatory was designed to elicit whether the examining physician had an opinion regarding whether Carter's claims of pain and the need to keep his legs elevated were consistent with the examining physician's findings. After declining to propound the interrogatory, the ALJ made negative credibility determinations regarding Carter's subjective complaints of pain based upon a lack of objective indicia, such as muscle atrophy.

"A claimant in a disability hearing is not entitled to unlimited cross-examination, but rather 'such cross-examination as may be required for a full and true disclosure of the facts.'" *Solis v. Schweiker,* 719 F.2d 301, 302 (9th Cir.1983) (quoting 5 U.S.C. § 556(d)). The ALJ has discretion to decide when cross-examination is warranted. *Id.* An ALJ abuses his discretion when he denies a claimant's request to cross-examine a medical source where that source's

\*\* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

\*\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

report is "crucial" to the ALJ's decision. *Id.*

The information Carter sought by way of the interrogatory was crucial to the issue of whether Carter was credible in his description of his pain and the need to elevate his legs to reduce the symptoms. The answer eventually given by the examining physician to the interrogatory and an accompanying treatment note—which were available to the Appeals Council—support Carter's subjective assertion of pain and the need to keep his leg elevated. They note that Carter had atrophy of the thigh muscles, and make specific reference to pain and swelling not being an unusual result of bilateral patella-femoral instability with degenerative arthritis, and that Carter's need to elevate his legs was compatible with his history and diagnosis. This evidence, if received by the ALJ, would have bolstered his credibility. Since credibility on the key issue of Carter's non-exertional limitation was crucial to the ALJ's decision, his refusal to send the interrogatory was an abuse of discretion.[1]

■ We also find the ALJ erred when he relied upon the medical-vocational guidelines, rather than consulting a vocational expert. *See Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir.1999) (significant non-exertional impairments, such as pain, may make reliance on the grids inappropriate; ALJ may rely on the grids alone only when they accurately and completely describe the claimant's abilities and limitations otherwise a vocational expert is required). The grids did not accurately and completely described Carter's limitation, since even the examining physician opined that Carter's ability to sit was limited to ninety minutes without interruption and to six hours in an eight hour day. He also noted that Carter must sit with his knees partially extended. This opinion was not contradicted by any other treating or examining source. In his findings, the ALJ agreed that Carter was limited to sedentary work "reduced by the need to sit with his legs somewhat extended, that is, he should have his knees less than sharply bent when sitting, and should change positions every hour or two." The ALJ nonetheless found that Carter's capacity for the full range of unskilled sedentary work has not been significantly compromised by his non-exertional limitations.

SSR 96–9p provides that jobs are sedentary if walking and standing are required no more than two hours in an eight hour workday and sitting would generally total about six hours of an eight hour workday. It goes on to provide more specifically:

Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a

---

1. We also agree with Carter that the ALJ's conclusion was not supported by substantial evidence and improperly ignored the opinion of both the consulting physician and the examining physician to the effect that Carter was limited in his ability to sit for prolonged periods. The ALJ based his conclusion on the statements of these doctors that Carter was limited to sedentary work. The ALJ, however, is not bound by physician opinions on ultimate issues, See 20 C.F.R. § 404.1527(e) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.... A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also, Montijo v. Secretary of Health and Human Resources*, 729 F.2d 599, 601 (9th Cir.1984) (ALJ not bound by uncontroverted opinion of physician on ultimate issue but cannot reject it without presenting clear and convincing reasons for doing so) and there was nothing to suggest that either doctor understood the legal requirements for sedentary work contained in the Social Security Regulation.

lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

In *Tackett*, we encountered a situation very similar to that of Carter's. Tackett also had knee problems that affected his ability to sit. He was required to change positions every half hour. We held the need to shift, stand up, or walk around every thirty minutes is a significant non-exertional limitation not contemplated by the grids. 180 F.3d at 1103–04.

The ALJ's use of the grids, rather than consulting a vocational expert cannot be reconciled with our holding in *Tackett*. See also, *Aukland v. Massanari*, 257 F.3d 1033, 1036–37 (9th Cir.2001) (finding *Tackett* applied and use of grids was inappropriate where treating physician opined claimant had non-exertional limitation of difficulty sitting for "long periods.") The inability to sit for the required six hours of the eight hour work day constitutes a non-exertional limitation which the ALJ was required to consider in his RFC determination. This inability removed Carter from the group of claimants for whom ALJ may rely on the grids alone since the grids did not accurately and completely describe his abilities and limitations.

REVERSED AND REMANDED.