Albert WILLIAMS, Plaintiff—
Appellant,

v.

Jo Anne B. BARNHART, Commission-
er of the Social Security Adminis-
tration, Defendant—Appellee.

No. 01–55665.

D.C. No. CV–98–05185–AN.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2002.

Decided March 20, 2003.

Before REINHARDT, O'SCANNLAIN
and PAEZ, Circuit Judges.

## MEMORANDUM*

Albert Williams appeals the district court's grant of summary judgment that affirmed the Commissioner of the Social Security Administration's ("Commissioner") denial of disability insurance benefits ("DIB") and supplemental social security income benefits ("SSI"). The Administrative Law Judge ("ALJ") found that the medical evidence established that Williams had a "severe" physical impairment,[1] but concluded that Williams retained a residual functional capacity ("RFC") for medium work and was therefore not eligible for DIB or SSI. In so concluding, the ALJ improperly dismissed an agreed medical examiner's ("AME's") non-exertional limitations and discounted the findings of other examining physicians. We have jurisdiction under 28 U.S.C. § 1391, and we reverse and remand for payment of benefits.

### I.

■ In support of his application for benefits, Williams submitted the medical report of Dr. Watkins, the AME in Williams' state workers' compensation proceeding. The ALJ accepted Dr. Watkin's opinion that Williams retained 75% of his prior lifting capacity. However, the ALJ concluded that Dr. Watkin's opinion that Williams' non-exertional limitations restricted Williams from upward and downward gazing or holding his head in a fixed position for a prolonged period were unsupported by any established pathology or by any findings in Dr. Watkin's physical examination or x-rays. He further stated that Dr. Watkin's opinion that Williams should not engage in repetitive bending and stooping was also inconsistent with his clinical physical examination and x-ray findings. Further, he found that Dr. Watkin's diagnostic impression of spinal sprains/strains or soft tissue injuries superimposed on early degenerative arthritis did not support any such limitations, "since any such soft tissue sprains/strains would be expected to have healed well within the 3½ years between the alleged injury and Dr. Watkin's examination." After considering these factors along with the various functional capacity assessments in Williams' medical records, the ALJ dismissed Dr. Watkin's opinion that Williams could not perform medium work. After careful review of the record, we conclude that the ALJ's rejection of Dr. Watkins opinions regarding Williams' non-exertional limitations is not supported by substantial evidence.

First, in rejecting Dr. Watkin's limitations on upward and downward gazing and holding the head in a fixed position, the ALJ's decision did not reference or discuss any "established pathology" that would contradict Dr. Watkin's opinion, and it did not address any contradictory findings in

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The ALJ made this determination at "Step Two" of the five-step sequential analysis used for making DIB and SSI eligibility determinations under the Social Security Regulations ("SSRs"). 20 C.F.R. §§ 404.1520, 416.920. At Step Three, the ALJ concluded that Williams' impairment did not meet or equal the criteria of any impairment identified in the appendix to the Social Security Regulations commonly referred to as the "Listings." In making this determination, the ALJ concluded that Williams had the RFC to perform medium work with no work at protected heights or around dangerous, unguarded, moving machinery. At Step Four, the ALJ found that Williams was not able to perform his past relevant work and had no transferable skills, but, at Step Five, he determined that there were numerous jobs in the Southern California region that Williams could perform given his vocational profile and RFC.

the other physicians' reports. Dr. Watkin's own physical examination of Williams revealed a reduced range of motion in the cervical spine and neck, and he noted that Williams' x-rays showed early degenerative changes in the cervical spine and neck, thereby providing an objective basis for his conclusion. Because the ALJ failed to set forth his reasoning and the evidentiary support for his interpretation of the medical evidence, his rejection of Dr. Watkin's limitations on Williams' repetitive forward and downward gazing and fixed-position head-holding is not supported by substantial evidence. *See Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir.1999).

Regarding Dr. Watkin's limitation on repetitive bending and stopping, the ALJ failed to point to any finding in Dr. Watkin's report to support his conclusion that this restriction was inconsistent with Dr. Watkin's physical examination and x-ray findings. In fact, Dr. Watkin's x-ray studies revealed degenerative changes throughout the cervical, thoracic and lumbar spine. Moreover, Dr. Watkin's findings were supported by reports from Williams' other examining physicians. For example, Dr. Sturman, whose opinion the ALJ did not address, opined that bending, stooping, and crawling should also be proscribed, while Dr. Kent, whose opinion the ALJ appears to have found credible, noted that Williams had a weakness of the lower extremities and that flexion at his waist was limited to bringing his fingertips nine inches from his toes. In addition, Dr. Dombrowski, whose opinion the ALJ improperly dismissed solely because he was hired by Williams' workers' compensation attorneys,[2] diagnosed cervical disc herniation.

Finally, the ALJ failed to cite any specific physician's report stating that any soft tissue sprains/strains would have healed well within the 3½ years between the alleged injury and Dr. Watkin's examination, and, in direct conflict with the ALJ's conclusion, Dr. Kent also diagnosed a cervical and lumbosacral sprain. Because the ALJ did not resolve these ambiguities in the record and relied on his own lay opinion regarding how long a sprain/strain would take to heal, his rejection of Dr. Watkin's opinion that Williams could not engage in repetitive bending and stooping was also not supported by substantial evidence.

Because the ALJ erroneously rejected Dr. Watkin's opinion regarding Williams' non-exertional limitations, there was no basis for the ALJ's decision to reject Dr. Watkin's opinion regarding Williams' inability to perform medium work. Not only did the ALJ improperly dismiss the medical evidence in support of Dr. Watkin's non-exertional limitations, but the ALJ also failed to recognize that these limitations were critical to the proper determination of Williams' RFC. A claimant's RFC is limited to that necessary to perform sustained work on a regular basis at the particular level of exertion, *see Program Policy Statement: Titles II and XVI: Determining Capability to Do Other Work—the Medical Vocational Rules of Appendix 2: SSR 83–10,* 1983 WL 31251, *2 (S.S.A.1983), and "a claimant must be able to perform the full range of jobs in a given category." *Tackett,* 180 F.3d at 1101. When a claimant's non-exertional limitations significantly restrict the range of work permitted by his exertional limita-

---

**2.** Although the ALJ may consider the fact that Dr. Dombrowski was retained by Williams' workers' compensation counsel in determining whether to find Dr. Dombrowski credible, he could not use that fact as the sole basis for rejecting his opinion. *See Saelee v. Chater,* 94 F.3d 520, 522–23 (9th Cir.1996); *Burkhart v. Bowen,* 856 F.2d 1335, 1339 (9th Cir.1988); *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1995).

tion, these impairments "may limit the claimant's functional capacity in ways not contemplated by the [Medical–Vocational] guidelines." *Id.* at 1102. Therefore, the ALJ's conclusion that Dr. Watkin's additional work limitations were "quite inconsistent with the foundational limitation to no very heavy work" is unfounded and cannot provide support for his conclusion that Williams had an RFC for performing medium work.

## II.

■ Because the ALJ failed to provide adequate reasons for rejecting Dr. Watkin's opinion, we credit that opinion "as a matter of law" and do not remand for the sole purpose of allowing the ALJ to reevaluate Dr. Watkin's opinion. *Lester*, 81 F.3d at 834. Taking Williams' non-exertional limitations into account, Williams is precluded from performing the full range of medium work and therefore could only have an RFC for performing light or sedentary work. *See Tackett*, 180 F.3d at 1101. Because of Williams' age and lack of transferable skills, an RFC that corresponds with light or sedentary work entitles him to a finding of disability.[3]

Because the record here has been fully developed and further administrative proceedings would serve no useful purpose, we reverse the district court's judgment and remand for entry of judgment directing the payment of benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996) (holding that where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited, those conditions warrant a remand for an award of benefits rather than for further proceedings). We therefore reverse the district court's judgment and remand for entry of judgment directing the payment of benefits.

■

O'SCANNLAIN, Circuit Judge, dissenting.

I must respectfully dissent from the decision to reverse the district court and to award disability benefits. The Commissioner's decision to deny benefits may be overturned "only if it is not supported by substantial evidence." *Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir.1999). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Id.* Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.

---

**3.** Williams was 53 years old when he filed his claim for DIB/SSI. Under SSA regulations, at age 53, Williams is categorized as "closely approaching advanced age." 20 C.F.R. § 404.1563(d). However, by the December 1995 date of the ALJ's second and final decision, Williams was 57 years old, which corresponded to a classification of "advanced age." 20 C.F.R. § 404.1563(e). The regulations provide that "if you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work." 20 C.F.R. § 404.1568(d)(4). The ALJ determined that Williams did not have any transferable skills. Because the ALJ is required to use the age categories that apply to a claimant during the period for which the ALJ must determine if the claimant is disabled, 20 C.F.R. § 404.1563(b), and the period of adjudication started on March 17, 1991 and continued until December 27, 1995, Williams would be entitled to a finding of disability in light of his limited RFC for performing light or sedentary work.

*Id.; Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995).

In this case, the ALJ rejected the recommendation of an examining physician that the claimant should refrain from repetitive upward and downward gazing or holding his head in a fixed position for a prolonged period of time. The ALJ may reject the *uncontradicted* opinion of an examining physician for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995). However, where a treating physician's opinion is contradicted by a nontreating source, "the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews,* 53 F.3d at 1041.

Dr. Watkins' recommendation is inconsistent with those of a nontreating physician, Dr. Kent, who recommended that the claimant "should be prophylactically precluded from very heavy lifting to prevent reinjury and/or aggravation of his current complaints." The recommendations of Dr. Watkins and Dr. Kent conflict, hence it is solely the province of the ALJ to resolve the conflict. *See id.* In addition, with one notable exception,[1] no other examining physician–even those associated with the claimant's workers compensation claim–imposed the restriction suggested by Dr. Watkins. *See Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982) ("questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary"); *Saelee,* 94 F.3d at 522 ("The ALJ is responsible for determining credibility and resolving conflicts in the medical testimony"). It was reasonable for the ALJ to resolve the disputed recommendation.

Two other reasons also serve to support the ALJ's conclusion. First, the ALJ determined that Dr. Watkins' recommendation was inconsistent with the documentary medical evidence. Ample evidence on the record exists to support that conclusion. Second, the ALJ found that Williams was an incredible witness. At the original hearing, the claimant refused to give his date of birth, refused to give any details of his treatment at the Veterans' Hospital, refused to discuss his current use of medication, refused to say what he could lift and endorsed 10 pounds only after much prompting and cajoling by his attorney.[2] At its most intense, the pain he testified to "appear[s] to be minimal, remediable with current minimal treatment, and generously considered in reducing his residual functional capacity to any extent." In making his recommendation, Dr. Watkins specifically relied on the claimant's

---

1. Dr. Dombrowski, a physician hired by the claimant's workers' compensation attorneys to provide a litigation report, provided an assessment of the claimant's functional capacity that the ALJ found was "ridiculous, completely out of the mainstream of evidence ..., is unsupported by his own report, is polemical in nature, and has no persuasive value." To the extent the majority suggests otherwise, the ALJ provided sufficient reasons–nay compelling ones–for rejecting Dombrowski's self-serving and unsupported assessment. *See Saelee v. Chater,* 94 F.3d 520, 523 (9th Cir. 1996) (where a physician's opinion is solicited by claimant's counsel, that fact may be used in conjunction with other evidence in the record to question the physician's credibility and disregard his opinions).

2. The district court found other aspects of Williams' claim for disability benefits were decidedly suspect. For example, Williams submitted two separate versions of a psychiatric evaluation to the ALJ–one long and one short. The "short" version "deleted sections containing specific findings and opinions that could, on balance, be construed as more harmful than helpful to Plaintiff's Workers Compensation case." Clearly, the ALJ was never meant to see the "long" version of this report.

subjective complaints of pain, and noted that the claimant "did not appear to put his full effort" into grip and strength tests. Because Dr. Watkins' recommendation was based on the self-serving complaints of an unreliable claimant, the ALJ could legitimately discount that recommendation. *Andrews*, 53 F.3d at 1043 ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").

I respectfully dissent.