Rose M. GLASS, Plaintiff—Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant—Appellee.

No. 04–55272.

D.C. No. CV–02–01638–IEG.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2005.

Decided Jan. 9, 2006.

Thomas Garrett Roche, Attorney at Law, San Diego, CA, for Plaintiff—Appellant.

John C. Cusker, Asst. Reg. Csl., SSA—Social Security Administration Office of the General Counsel, San Francisco, CA, for Defendant—Appellee.

Before HUG, SILER,* and WARDLAW, Circuit Judges.

### MEMORANDUM**

Rose M. Glass appeals the district court's affirmance of the Social Security Commissioner's decision denying her application for Social Security disability insurance benefits.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* the district court's affirmance of the Commissioner's denial of benefits. *Tackett v. Appel,* 180 F.3d 1094, 1097 (9th Cir.1999). This Court may set aside the Commissioner's denial of disability insurance benefits if the administrative law judge's findings are based on legal error or are not supported by substantial evidence in the rec-

ord as a whole. *Id.* Substantial evidence means "more than a mere scintilla but less than a preponderance" of evidence. *Id.* at 1098 (internal quotation marks omitted). Since we conclude that the administrative law judge ("ALJ") erred in concluding that Glass was not disabled, we reverse the judgment of the district court and remand with directions to grant benefits.

The ALJ issued his decision in this case on February 20, 2002, finding that Glass was not disabled. He applied the five-step sequential analysis required for cases such as this one. *See Tackett,* 180 F.3d at 1098–99 (9th Cir.1999). At step one, the ALJ found that Glass had not engaged in substantial gainful activity since her alleged onset date of disability. At step two, the ALJ found that Glass suffered from a severe impairment as a result of her morbid obesity, ligament strain of the right knee, and hypertension. At step three, the ALJ concluded that Glass's impairments were not severe enough to meet or equal any of the impairments listed in the Medical Listing of Impairments. Glass does not challenge any of these findings.

However, the ALJ then found that Glass was not disabled because her impairments did not prevent her from being able to perform her previous jobs of cashier/traffic controller and group home worker as actually and generally performed.

■ ALJs are required to consider the combined effect of obesity with other impairments when determining a claimant's ability to work. *See Celaya v. Halter,* 332 F.3d 1177, 1181–82 (9th Cir.2003). At the hearing, the testifying medical expert, Dr. Mason, testified about the combined effects of Glass's obesity with her other

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

medical problems. Dr. Mason concluded that Glass suffered from a number of medical problems and limitations. First, he testified that her weight of 450 pounds contributed to her overall functional limitations, including problems with her knee, posture, range of motion, and bending. He also testified that she had decreased range of motion in both knees resulting from degenerative joint disease.

Dr. Mason testified that the combination of Glass's morbid obesity and knee problems resulted in limitations on Glass's functional capacity. He testified that long standing, walking, climbing or descending stairs, squatting, and kneeling all would be affected. He also testified that she would be able to bend only partially and only occasionally. He further testified that she would be able to lift only twenty pounds.

Dr. Mason also addressed Glass's slow movement. He testified that it would take Glass longer just to get out of a chair and it would take her longer to get from one place to another. He specifically stated that her ambulatory pace was slow and that her movements would be done slowly so she would not be able to respond quickly to activities that would require her to move about.

In addition, Dr. Mason testified that Glass could tolerate no more than four hours per day standing and also testified that this amount of time would have to be broken down into shorter segments during an eight-hour workday.

■ In his decision, the ALJ did not explicitly address the issue of Glass's slowness or her need to break up her time standing and walking into shorter segments, but he did state that he agreed with Dr. Mason's testimony. Substantial evidence supports the conclusion that Glass moves slowly. In addition to Dr. Mason's testimony regarding Glass's slowness, Dr. Levine, an orthopedist who examined Glass, found that her general movements were slow. There is no contradictory evidence in the record, and common sense dictates that a 450 pound woman with degenerative knee problems and hypertension is going to move slowly. There is no evidence that would support a contrary conclusion.

■ Substantial evidence also supports the conclusion that Glass would need to break up any walking and standing into shorter segments than would persons not suffering from similar impairments. The evidence regarding her morbid obesity, limitation in knee movement, and hypertension is uncontradicted. Common sense also supports the conclusion that a woman with these medical conditions would have difficulty walking and standing for four hours at a time with only one short break, especially on a daily and prolonged basis. In fact, Dr. Mason testified not only that Glass already had knee problems, but that simply the force of a woman of her size getting out of a chair would induce patella pain and that, as time goes by, such an obese woman will almost certainly develop leg problems. Despite these limitations, the ALJ concluded that Glass's past relevant work as a cashier/traffic controller and group home worker did not require the performance of work-related activities precluded by her limitations. He therefore concluded that she was capable of performing her past relevant work, both as actually and generally performed and that she therefore was not disabled. A claimant is deemed capable of performing her past relevant work if she is capable of returning to her past job *or* if she is capable of returning to her former *type* of work. *Villa v. Heckler*, 797 F.2d 794, 798–99 (9th Cir.1986). In Glass's case, however, the vocational expert testified that her jobs, as she performed them, were consistent with the job categorization descrip-

tions in the Dictionary of Occupational Titles. Thus, if Glass could not perform her specific past jobs, then she could not perform that *type* of work either.

The ALJ reached his conclusion that Glass was able to perform her prior jobs by relying on the vocational expert's response to a hypothetical question. "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988) (emphasis in original). If the assumptions in the hypothetical are not supported by the record, the vocational expert's opinion has no evidentiary value. *Id.* The hypothetical question in the instant case included many of the claimant's functional limitations, but did not include the limitations concerning her slowness or her need to break periods of walking and standing into shorter segments. Therefore, the vocational expert's answer to the hypothetical question has no evidentiary value.

The remaining evidence does not support a finding that Glass was able to perform her prior jobs. The claimant's past job as a traffic controller/cashier required her to stand or walk at least seventy-five percent of the time while she directed traffic and collected money. Her job as a respite worker in a group home required her to walk or stand seventy-five percent of the time. Her job as a child care counselor at a group home required her to lift over a hundred pounds occasionally and twenty-five pounds more frequently. That job also required her to lift and carry a client during a take down or when a client passed out; such a task obviously would require not only bending over and lifting more than twenty pounds, but also would require quick movements. Given Glass's lifting limitations, slow movement, limits on walking and standing, and need to break her periods of walking and standing into shorter segments, Glass clearly could not perform these jobs. Thus, Glass met her burden at step four of the sequential analysis.

At step five, the burden shifts to the Commissioner to prove that there are a significant number of jobs in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 404.1520(g), 404.1562; *Tackett,* 180 F.3d at 1099; *Embrey,* 849 F.2d at 422. If the Commissioner does not meet this burden, then the claimant is disabled and therefore entitled to disability benefits. *See* 20 C.F.R. § 404.1520(g); *Tackett,* 180 F.3d at 1099. Here, the Commissioner did not produce evidence that Glass could perform a significant number of jobs in the national economy. Thus, the Commissioner failed to meet her burden and Glass therefore is entitled to disability benefits.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**