**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| GREG A. KOEPKE,<br><br>       Plaintiff - Appellant,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>       Defendant - Appellee. | No. 11-35381<br><br>D.C. No. 6:09-cv-03092-HO<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Argued and Submitted July 12, 2012
Portland, Oregon

Before: GOODWIN, PREGERSON, and CHRISTEN, Circuit Judges.

Greg A. Koepke appeals the district court's judgment affirming the

Commissioner of Social Security's final decision to deny his application for

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

disability insurance benefits under Title II of the Social Security Act.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for further proceedings.

In cases involving social security disability appeals, we review "de novo the decision of the district court affirming the decision of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). We "may set aside the Commissioner's denial of [disability insurance] benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Id.* at 1097–98. "Substantial evidence is defined as more than a mere scintilla but less than a preponderance." *Id.* at 1098 (internal quotation marks and citation omitted).

Koepke argues that the ALJ improperly failed to credit his statements regarding the extent and nature of his pain and limitations. But the ALJ provided specific reasons why he found Koepke's testimony unpersuasive and his findings are supported by clear and convincing evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Specifically, the ALJ cited noncompliance with and abuse of narcotic prescriptions, discharge from separate medical practices, and Koepke's reports of losing narcotic prescriptions or washing them in his jeans

---

[1] Because the parties are familiar with the facts and procedural history of this case, we will discuss them only as necessary to explain our decision.

and/or his jacket. The ALJ's conclusion that this reflected a lack of credibility is supported by substantial evidence.

Koepke contends the ALJ improperly gave less weight to the opinion of his nurse practitioner, Gwendolyn Scurka. The ALJ's decision cites specific and legitimate reasons for not giving significant weight to Ms. Scurka's opinion – her notes were based on Koepke's self-reports rather than on her independent, objective medical opinion. The ALJ's findings are supported by substantial evidence, which includes Ms. Scukra's records.

Koepke also contends the ALJ's residual functional capacity assessment was legally flawed. We agree. The ALJ found that Koepke had "the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently with push and pull limited to these weights; stand and walk six hours in an eight hour workday; and sit six hours in an eight hour workday . . . [but was] precluded from climbing ladders, ropes and scaffolds . . . [and] limited to occasional stooping, kneeling, crouching and crawling." The ALJ cited no evidence to support his finding that Koepke is capable of sitting, walking, or standing for six hours out of an eight-hour workday, and our review of the record reveals no such evidence. The only objective evidence in the record regarding Koepke's ability to sit, stand, or walk is the physical capacities evaluation dated

3

November 5, 2008, which does not support this finding. In assessing Koepke's residual functional capacity, the ALJ also found that Koepke was limited to "occasional stooping, kneeling, crouching, and crawling," but the November 5th evaluation indicates that Koepke should never squat, kneel, bend/stoop, or crouch. We find no evidence in the record that contradicts this assessment of Koepke's ability to stoop, kneel, crouch, or crawl. The ALJ stated that he considered the November 5th evaluation, but his decision did not explain why it was rejected. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). We conclude the ALJ's finding regarding Koepke's residual functional capacity is not supported by substantial evidence, and remand for further proceedings.

Koepke also asserts the ALJ erred at the fifth step of the evaluation process because he did not present a complete hypothetical to the vocational expert. We agree. A hypothetical "posed to the vocational expert must set forth *all* of the limitations and restrictions of the particular claimant." *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *Embrey*, 849 F.2d at 422. When a hypothetical "does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can

4

perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted). Here, the ALJ's initial hypothetical question to the vocational expert did not include any limitations on stooping, kneeling, crouching and crawling, but the ALJ's written decision shows that he found Koepke had these limitations to his residual functional capacity. The validity of the vocational expert's conclusion is questionable because it was based on an improper hypothetical. *See id.*

The ALJ also acknowledged that Koepke spends some of the day "reclining, and if not reclining, with feet elevated," but failed to include this limitation in the hypothetical posed to the vocational expert. Koepke's attorney asked the vocational expert whether adding limitations regarding Koepke's need to elevate his legs at unpredictable times would affect the job classifications she had earlier testified were available to Koepke. The vocational expert responded that adding the limitations would "erod[e] [his] competitive base." Because neither the ALJ nor Koepke's attorney asked the vocational expert to explain the meaning of "eroding [his] competitive base," we cannot be certain whether the expert meant that Koepke is incapable of performing jobs that exist in significant numbers in the national economy. We therefore remand for further proceedings with respect to this issue as well.

5

We remand to the district court with instructions to remand to the Commissioner to clarify Koepke's residual functional capacity and to determine whether Koepke is able to perform gainful employment in the national economy. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotation marks omitted).

**REVERSED AND REMANDED.**