Richard D. ALBIDREZ, Plaintiff,

v.

Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.

No. EDCV 06–0050–RC.

United States District Court, C.D. California.

July 23, 2007.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

William M. Kuntz, William M. Kuntz Law Offices, Riverside, CA, for Plaintiff.

Cedina M. Kim, Office of U.S. Attorney, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Richard D. Albidrez filed a complaint on January 17, 2006, seeking review of the Commissioner's decision denying his application for disability benefits.

The Commissioner answered the complaint on June 6, 2006, and the parties filed a joint stipulation on July 25, 2006.

## BACKGROUND

### I

On November 17, 2003, plaintiff applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since May 3, 1995, due to a gunshot wound to the back. Certified Administrative Record ("A.R.") 57–59, 67. The plaintiff's application was denied initially on February 20, 2004, and was denied again on May 7, 2004, following reconsideration. A.R. 25–35. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge James S. Carletti ("the ALJ") on May 3, 2005. A.R. 36, 214–37. On July 7, 2005, the ALJ issued a decision finding plaintiff is not disabled. A.R. 9–19. The plaintiff appealed this decision to the Appeals Council, which denied review on November 17, 2005. A.R. 4–8.

### II

The plaintiff, who was born on March 26, 1962, is currently 45 years old. A.R. 57. He has an eighth or ninth-grade education, and has never worked. A.R. 68, 71, 217. The plaintiff has spent approximately 15 years in prison for various "assaults," and he was most recently released on parole on November 9, 2003. A.R. 217–18.

On September 11, 1984, plaintiff was shot multiple times in the back and chest. A.R. 128–29. Plaintiff was taken to Kaiser Permanente Hospital in Fontana, where he was treated for multiple gunshot wounds.[2] A.R. 126–54. Plaintiff underwent surgery,

---

**2.** Herman Pang, M.D., who treated plaintiff in the emergency room, noted plaintiff had five gunshot wounds in the front and two in the back. A.R. 128.

but retained bullets in the right shoulder joint area, the proximal humerus, and to the right of midline at L1–L2. A.R. 130–31, 152–53. X-rays showed subcutaneous emphysema on the right lateral chest wall and along the neck on the right. A.R. 152. Plaintiff was transferred to Riverside General Hospital on September 17, 1984. A.R. 126–27. At Riverside General Hospital, plaintiff was diagnosed with right lower leg paralysis. A.R. 105–25. Plaintiff remained hospitalized until October 9, 1984, when he was discharged to jail. A.R. 124. At the time of his discharge, Elisheva Hettinger, M.D., opined plaintiff "will probably have a permanent disability in the use of his right leg." A.R. 124–25. On May 31, 1985, plaintiff was diagnosed with right leg atrophy. A.R. 99.

While in prison, plaintiff had lumbar spine x-rays taken on January 7, 1997, which showed plaintiff has moderate degenerative changes and scoliosis.[3] A.R. 170. On March 12, 2001, plaintiff was prescribed a cane due to his right leg weakness and atrophy. A.R. 159.

On February 6, 2004, Bunsri T. Sophon, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him with a right ulnar nerve injury and a gunshot wound injury, with right lower leg paralysis. A.R. 181–85. Dr. Sophon found plaintiff had "marked" atrophy of his right leg muscles, and no active motion of the right hip, knee, ankle, or foot. A.R. 184. Dr. Sophon opined: plaintiff is able to lift and carry 20 pounds occasionally and 10 pounds frequently; he is a mandatory cane user and must use a drop foot brace for ambulation at all times; he is able to stand and walk for four hours out of an 8–hour day and occasionally climb, but he is unable to kneel, squat or crawl; and he is able to perform occasionally pushing, pull-

ing, gripping and grasping with his right hand. A.R. 184–85.

On February 18, 2004, David A. Haaland, M.D., a nonexamining physician, opined plaintiff can occasionally lift and/or carry up to 20 pounds, use foot controls with his right leg, climb ramps and stairs, balance and stoop, can frequently lift and/or carry up to 10 pounds and finger, can stand and/or walk for up to 4 hours in an 8–hour day, can never climb ladders, ropes or scaffolds, kneel, crouch, or crawl, and must avoid all exposure to hazards and machinery due to his right leg weakness and because he must wear a leg brace. A.R. 187–94. Dr. Haaland opined plaintiff's condition should not preclude sedentary work, A.R. 187–94, and on May 6, 2004, John Meek, M.D., reaffirmed Dr. Haaland's opinion. A.R. 201.

Between May 27, 2004, and January 26, 2005, plaintiff received treatment at the Riverside County Regional Medical Center, where he was advised he does not need surgery to remove the bullet at T12/L1–L2. A.R. 203–10.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the ad-

---

3. Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine[,]" which can be either to the left

(levoscoliosis) or to the right (dextroscoliosis). *Dorland's Illustrated Medical Dictionary* at 488, 987, 1612.

ministrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998); *Holohan v. Massanari,* 246 F.3d 1195, 1201 (9th Cir.2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." *Parra,* 481 F.3d at 746; *Robbins,* 466 F.3d at 882.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment *or various* limitations to perform his past work. 20 C.F.R. § 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since his November 17, 2003 filing date." (Step One). The ALJ then found plaintiff's "right ulnar nerve injury and a gunshot wound with right lower extremity paralysis are considered 'severe'" impairments (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff has no past relevant work. (Step Four). Finally, the ALJ concluded plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

## IV

"The Commissioner has acknowledged certain impairments to be so severe as to preclude substantial gainful activity. These impairments are set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. A claimant whose impairments or combination of impairments meets or equals the 'Listings' is presumptively disabled." *Regennitter v. Comm'r of the Soc. Sec. Admin.,* 166 F.3d 1294, 1298 n. 2 (9th Cir.1999); *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001). However, the mere diagnosis of an impairment set out in a Listing does not mean the claimant meets the Listing; rather, the claimant "must also have the findings shown in the Listing of that impairment." 20 C.F.R. § 416.925(d); *Young v. Sullivan,* 911 F.2d 180, 184 (9th Cir.1990). "To meet a listed impairment, a claimant must es-

tablish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.1999). "To **equal** a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Id.* (citation omitted, emphasis added); 20 C.F.R. § 416.926. "A finding of equivalence must be based on medical evidence only." *Lewis,* 236 F.3d at 514; *Tackett,* 180 F.3d at 1100.

■ Although conceding he does not meet the requirements of any Listing, *see* Joint Stip. at 4:4–5, 5:23–24, plaintiff contends the ALJ erred in Step Three when he failed to obtain testimony from a medical expert regarding whether plaintiff's condition equals the requirements of Listing 1.02,[4] Listing 1.04,[5] and/or Listing

4. Listing 1.02 provides:
*Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively....
20 C.F.R. § 404, Subpart P, App. 1, Listing 1.02.
[An][i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.... [¶] To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.
20 C.F.R. § 404, Subpart P, App. 1, Listing 1.00b.

5. Listing 1.04 provides:
*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); [¶] or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; [¶] or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by find-

11.04.[6] The plaintiff is not correct.

Here, the ALJ found plaintiff's impairments, either alone or in combination, do not meet or equal any Listing since "[n]o physician has opined that the [plaintiff's] condition meets or equals any listing, and the state agency physicians have opined that it does not." A.R. 14. Thus, the ALJ based his medical equivalence determination on the opinions of nonexamining physicians Drs. Haaland and Meek, who both opined plaintiff's condition is not medically equivalent to a Listing and both signed Disability Determination and Transmittal forms. A.R. 14, 24–25, 193, 201; *see also* SSR 96–6p, 1996 WL 374180, *3 (S.S.A.)[7] ("The signature of a State agency medical or psychological consultant on a[ ] ... Disability Determination and Transmittal Form ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir.2004) (State agency physician's signature on Disability Determination and Transmittal form conclusively established that a physician designated by the Commissioner considered the issue of medical equivalence). Thus, "[t]he signed written opinion[s] of the state agency physician[s] [provide] a sufficient basis for the ALJ's equivalence determination, and the live testimony of a medical expert was not required[,]" *Crane v. Barnhart,* 224 Fed.Appx. 574, 578 (9th Cir.2007) (Unpublished Disposition);[8] SSR 96–6p, 1996 WL 374180 at *3,[9] and substantial evidence supports the ALJ's Step Three finding

---

ings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.
20 C.F.R. § 404, Subpart P, App. 1, Listing 1.04.

**6.** Listing 11.04 provides:
*Central nervous system vascular accident.* With one of the following more than 3 months post-vascular accident:
    A. Sensory or motor aphasia resulting in ineffective speech or communication; or
    B. Significant and persistent disorganization of motor functions in two extremities, resulting in sustained disturbance of gross and dextrous movements, or gait and station.
20 C.F.R. § 404, Subpart P, App. 1, Rule 11.04.

**7.** Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. *Massachi v. Astrue,* 486 F.3d 1149, 1152 n. 6 (9th Cir.2007); *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 n. 2 (9th Cir.2005). Although Social Security Rulings do not have the force of law, *Chavez v. Dep't of Health & Human Servs.,* 103 F.3d 849, 851 (9th Cir. 1996); *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989), once published, they are binding upon ALJs and the Commissioner. *Holohan,* 246 F.3d at 1202–03 n. 1; *Gatliff v. Comm'r of the Soc. Sec. Admin.,* 172 F.3d 690, 692 n. 2 (9th Cir.1999).

**8.** *See* Fed. R.App. P. 32.1(a); Ninth Circuit Rule 36–3(b).

**9.** Although SSR 96–6p provides for two exceptions in which an ALJ will be required to obtain a medical expert's opinion regarding medical equivalency, *see* SSR 96–6p, 1996 WL 374180 at *3–4 ("[A]n [ALJ] must obtain an updated medical opinion from a medical expert in the following circumstances: [¶] When no additional medical evidence is received, but in the opinion of the [ALJ] ... the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [¶] When additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical or psychological consultant's finding that the impairment (s) is not equivalent in severity to any impairment in the Listing of Impairments." (footnote omitted)), plaintiff has not shown that either exception applies here. *Foley v. Barnhart,* 432 F.Supp.2d 465, 483 (M.D.Pa.2005).

that plaintiff does not meet or equal a listed impairment. *Scheck,* 357 F.3d at 700; *Crane,* 224 Fed.Appx. at 578–79.

## V

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir.2001); *Cooper v. Sullivan,* 880 F.2d 1152, 1155 n. 5 (9th Cir.1989). Here, the ALJ found plaintiff has the RFC to do limited light work, as follows:

> [plaintiff can] ... lift/carry 10 pounds frequently ... [and] 20 pounds occasionally; [plaintiff] is a mandatory cane user and needs a foot drop brace for ambulation at all times; and [plaintiff] can stand/walk for four hours per eight-hour work day; [plaintiff can] perform occasional climbing; [plaintiff can perform] no kneeling, squatting, or crawling; and [plaintiff] can perform occasional pushing, pulling, gripping, and grasping with his right hand.

A.R. 18. However, plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because the ALJ erroneously found plaintiff was not a credible witness. The plaintiff is not correct.

The plaintiff testified at the administrative hearing that he has a bullet still lodged in his back "half way in [his] spine," his right leg has atrophied and does not work, and he experiences back pain, pain on the right side of his body, and occasional neck pain. A.R. 218–19, 221–24. The plaintiff stated he cannot control his right leg and he has to use a cane to walk, as his right leg "just hang[s] there" and he has to pull it. A.R. 219–22. Plaintiff also stated he must use a cane and hold onto some-

thing with his other hand to climb stairs, and he cannot walk across grass or other uneven surfaces without tripping over his right leg. A.R. 224–25. The plaintiff also testified he was shot in the right arm and his right ring, middle and little fingers do not work. A.R. 222–23, 228–29. Finally, plaintiff testified he cannot work in a seated position because his back and legs start to hurt and he has to lie down. A.R. 226–27.

Once a claimant has presented objective evidence that he suffers from an impairment that could cause pain or other nonexertional limitations,[10] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir.1991) (en banc); *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir.2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he " 'must provide specific, cogent reasons for the disbelief.' " *Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); *Moisa,* 367 F.3d at 885. Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Parra,* 481 F.3d at 750 (9th Cir.2007).

Here, the ALJ found plaintiff was not totally credible for several reasons. First, the ALJ found plaintiff "has never worked, which raises some questions as to whether his current unemployment is truly

---

**10.** "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." *Swenson v. Sullivan,* 876 F.2d 683, 687–88 (9th Cir. 1989).

the result of his medical problems." A.R. 16. An ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination. *See Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir.2002) (ALJ's finding claimant had "extremely poor work history" and showed "little propensity to work in her lifetime" supports negative credibility determination); *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir.2001) ("A lack of work history may indicate a lack of motivation rather than a lack of ability."); *Schaal v. Apfel,* 134 F.3d 496, 502–03 (2d Cir.1998) (ALJ may properly consider claimant's poor work history in concluding she is not credible witness); 20 C.F.R. § 416.929(c)(3) (in assessing symptoms such as pain, fact-finder "will consider all of the evidence presented, including information about [claimant's] prior work record....").

■ Second, the ALJ found plaintiff's claims of a disabling impairment are contradicted by the medical evidence. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disability effects." *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir.2001); *see also Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir.2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, the ALJ properly rejected plaintiff's claim that he is unable to work on the ground no physician has opined plaintiff is disabled by his conditions. *See Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir.1993) (substantial evidence supports finding claimant can do a narrow range of medium work where no examining physician concludes claimant is totally disabled); *Harper v. Sullivan,* 887 F.2d 92, 96–97 (5th Cir.1989) (substantial evidence supports ALJ's conclusion claimant's complaints are not credible when "[n]o physician stated that [the claimant] was physically disabled").

Finally, the ALJ found plaintiff was not credible because of his felony convictions. A.R. 16. Although some courts have found this reason to be proper, *see, e.g., Simmons v. Massanari,* 264 F.3d 751, 756 (8th Cir.2001) (ALJ properly rejected claimant's subjective complaints based, in part, on claimant having served time in prison); *Williams v. Comm'r of Soc. Sec.,* 423 F.Supp.2d 77, 84 (W.D.N.Y.2006) (ALJ properly based negative credibility determination, in part, on claimant's testimony "she had engaged in assaultive conduct and possibly criminal behavior in the past...."), this Court would limit such rationale to convictions involving moral turpitude; thus, mere assault convictions are not a proper basis for the ALJ's adverse credibility finding. However, a review of the Riverside County Superior Court's case indices,[11] shows plaintiff has suffered crimes involving moral turpitude, including a conviction for violating California Penal Code ("P.C") § 148.9(a) (showing false ID to peace officer), as well as the violent crime of attempted robbery in violation of P.C. §§ 664/211. A.R. 217–18. Thus, plaintiff's felony convictions, and the reason offered by the ALJ, also are a proper basis for an adverse credibility determination.[12]

11. The Court, pursuant to Fed.R.Evid. 201, takes judicial notice of Riverside County Superior Court case nos. 342410 and CR62122.

12. On the other hand, the ALJ also found plaintiff had received "no actual recent medical treatment for [his] impairments[,]" A.R. 16, and this finding is not a proper reason since it is not supported by substantial evidence; rather, plaintiff was repeatedly seen at the Riverside County Regional Medical Center in the months before the administrative hearing. A.R. 203–10.

Thus, the ALJ's reasons for his adverse credibility determination are "supported by substantial evidence." *Celaya v. Halter,* 332 F.3d 1177, 1181 (9th Cir.2003); *Thomas,* 278 F.3d at 959.

## VI

There are two ways for the Commissioner "to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett,* 180 F.3d at 1099; *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir.2001). However, the Commissioner cannot rely on the Grids when the claimant suffers from nonexertional limitations; rather, he must rely on the testimony of a vocational expert. *Thomas,* 278 F.3d at 960; *Osenbrock,* 240 F.3d at 1162. Furthermore, hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, *Thomas,* 278 F.3d at 956; *Lewis,* 236 F.3d at 517, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett,* 180 F.3d at 1101. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Matthews,* 10 F.3d at 681 (quoting *DeLorme v. Sullivan,* 924 F.2d 841, 850 (9th Cir.1991)); *Lewis,* 236 F.3d at 517.

Here, the ALJ asked vocational expert Sandra Fioretti the following hypothetical question:

> Assume we have a younger individual with an 8th grade education, who does have the ability to read, can't write. [He is] [a]ble to lift and carry 20 pounds occasionally, 10 pounds frequently, is able to ambulate with a cane and stand also for four hours out of an eight[-hour] work day, able to perform occasional climbing, unable to kneel, squat or crawl, able to perform occasional pushing and pulling and gripping, and grasping with the right hand. If those were the limitations in the [plaintiff's] vocational profile, would there be work activity that exists either nationally or locally that could be performed?

A.R. 231. The vocational expert responded that such an individual could work as an inspector and hand packager (250 jobs regionally and 4500 nationally), ticket taker (500 jobs regionally and 4150 nationally), or order caller (250 jobs regionally and 3800 nationally). A.R. 232. The vocational expert further testified that if such an individual were limited to sedentary work,[13] rather than light work, and occasional pushing, pulling, gripping and grasping with only the right hand, he could work as an assembler in buttons and notions (300 jobs regionally and 4000 nationally), an optical assembler (200 jobs regionally and 1500 nationally), or sorting small agricultural products (200 jobs regionally and 2500 nationally). A.R. 232–33. Based on the vocational expert's testimony, the ALJ concluded plaintiff is not disabled. A.R. 17–19. Plaintiff, however, contends the ALJ's Step Five determination is not supported by substantial evi-

**13.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

dence because: (a) the hypothetical questions to the vocational expert failed to include plaintiff's testimony that he needed to lie down during portions of the work day and Dr. Haaland's opinion that plaintiff should be limited to frequent fine fingering, and (b) the positions the vocational expert identified do not exist in significant numbers in the regional economy.

Initially, since the ALJ found plaintiff's testimony was not credible, and that finding is supported by substantial evidence, the ALJ's hypothetical question to the vocational expert was complete, and plaintiff's testimony that he needs to lie down during the day need not have been included. *See Greger,* 464 F.3d at 973 (9th Cir. 2006) ("The ALJ ... 'is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.'") (quoting *Osenbrock,* 240 F.3d at 1164–65); *Copeland v. Bowen,* 861 F.2d 536, 540 (9th Cir.1988) ("[E]xclusion of some of a claimant's subjective complaints in questions to a vocational expert is not improper if the [Commissioner] makes specific findings justifying his decision not to believe the claimant's testimony about claimed impairments such as pain.").

Furthermore, even assuming the ALJ erred by not including in the hypothetical question the opinion of Dr. Haaland regarding plaintiff's fingering, any such error was harmless since the vocational expert testified that an individual limited to frequent fingering would be still be able to work in the positions she identified, although the number of positions available would be reduced.[14] *See Burch,* 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.").

█ Finally, although the Ninth Circuit has never clearly established the minimum number of jobs necessary to constitute a "significant number" of jobs within the meaning of Step Five, *Barker v. Secretary of Health & Human Serv.,* 882 F.2d 1474, 1478–79 (9th Cir.1989), the vocational expert identified a total of 1700 jobs regionally and 20450 jobs nationally plaintiff can perform, and such numbers clearly constitute a significant number of jobs. *See Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir.1999) (between 1,000 and 1,500 jobs in the local area is a significant number of jobs); *Barker,* 882 F.2d at 1478–79 (1266 jobs in the local areas is within the statutory parameters). This is so even if these numbers are reduced by 15% (to 1445 regionally and 17382 nationally) in accordance with the vocational expert's testimony regarding plaintiff's ability to work if further limited to frequent fingering with his right hand. *Ibid.* Thus, substantial evidence supports the ALJ's Step Five determination that plaintiff is not disabled.

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

## JUDGMENT

IT IS ADJUDGED that Judgment shall be entered in favor of defendant.

14. In this regard, plaintiff's attorney asked the vocational expert to assume that, in addition to the limitations identified in the ALJ's hypothetical questions, plaintiff was limited to only frequent fingering with his right arm, and the vocational expert testified that such a limitation would reduce the available jobs by 10–15%. A.R. 234–36. The limitations to frequent fingering with the right arm, rather than both arms, accurately encompasses Dr. Haaland's assessment of plaintiff's condition in that Dr. Haaland specifically noted that the left side of plaintiff's body is "normal in all respects." A.R. 192.