Lynn CARLSON, Plaintiff,

v.

Michael J. ASTRUE, Commissioner
of Social Security, Defendant.

Civil No. 08–1202–ST.

United States District Court,
D. Oregon,
Portland Division.

Jan. 21, 2010.

Tim D. Wilborn, Wilborn Law Office, P.C., Tim Wilborn, Attorney at Law, Oregon City, OR, for Plaintiff.

Mathew W. Pile, Terrye Erin Shea, Social Security Administration, Office of General Counsel, Seattle, WA, Adrian L. Brown, U.S. Attorney's Office, Portland, OR, for Defendant.

## ORDER

HAGGERTY, District Judge:

Magistrate Judge Stewart referred to this court a Findings and Recommendation [21] in this matter. The Findings and Recommendation recommends remanding this matter for payment of benefits. Defendant has filed objections. For the reasons provided, this court adopts the Findings and Recommendation.

### STANDARDS

When a party objects to any portion of a Findings and Recommendation, the district court must conduct a *de novo* review. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). This court has performed a de novo

review, and has evaluated the Findings and Recommendation, the objections, and the entire record.

## DISCUSSION

The Findings and Recommendation concluded that this matter should be remanded for an award of benefits because the Administrative Law Judge (ALJ) improperly assessed plaintiff's credibility and erroneously found that plaintiff's medical record failed to corroborate his symptom testimony, failed to properly consider medical evidence, erred in evaluating lay testimony, and omitted consideration of whether plaintiff met Listing 14.09B, which pertains to ankylosing spondylitis— a condition suffered by plaintiff.

Defendant objects to the Findings and Recommendation, asserting that the administrative ruling should be affirmed, or that this matter should be remanded for further proceedings, because the reasoning presented in the Findings and Recommendation is based primarily upon "evidence and testimony that the ALJ did not see [sic]." Objections at 2. Defendant acknowledges that this court has the power to remand for an award of benefits, but "should use that power sparingly, only in cases where the record as a whole clearly compels that result, not where there is conflicting evidence about whether the claimant could work." Objections at 5 (citing *Briscoe ex. rel. Taylor v. Barnhart*, 425 F.3d 345, 356–57 (7th Cir.2005)).

Additionally, defendant objects to the weight the Findings and Recommendation gives to medical evidence submitted to the Social Security Administration's Appeals Council, asserting that such evidence should be given "little, if any, weight." Objections at 6 (citing *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir.1989)).

Defendant also contends that the ALJ's credibility evaluation should be upheld as reasonable considering the evidence that was before the ALJ. Specifically, defendant emphasizes that the ALJ properly relied on the fact that plaintiff was able to maintain employment with a fair amount of success, and that the facts presented here do "not involve a failed work attempt." Objections at 9.

Finally, defendant asserts that the ALJ assessed whether plaintiff met disability Listings properly, in accordance with the theories presented by plaintiff's representative. Defendant argues that if plaintiff fell short in producing evidence that he met a Listing, the proper result in this litigation should be to remand for further proceedings.

Defendant's objections have been considered. They are rejected.

■ The Ninth Circuit has held repeatedly that a reviewing court is entitled to credit as true medical and lay witness testimony. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir.2003) (discussing Ninth Circuit cases involving the credit as true doctrine). The Ninth Circuit has acknowledged that crediting evidence and remanding for an award of benefits is proper in cases in which "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen v. Chater*, 80 F.3d 1273, 1293 (9th Cir.1996).

■ Defendant's suggestion that the Magistrate Judge exercised her discretion to remand for an award of benefits as a form of punitive damages because of the ALJ's errors is specious. The Findings and Recommendation correctly set forth the law applicable to credibility determina-

tions in the Ninth Circuit. After a claimant has established the existence of an impairment that could reasonably cause the reported symptoms (here, plaintiff has suffered from ankylosing spondylitis for thirty years), the ALJ may not reject the claimant's testimony regarding the degree of symptoms suffered absent clear and convincing reasons.

Moreover, defendant's objections to the weight given to the evidence presented to the Appeals Council are not well-taken. Contrary to counsel's assertion, the decision in *Weetman* does not direct that evidence obtained after an ALJ's opinion is entitled to "little, if any, weight." The decision comments only that such evidence may be viewed as "all the less persuasive." *Weetman*, 877 F.2d at 23. The Magistrate Judge evaluated the evidence properly.

 The Findings and Recommendation also correctly concluded that the ALJ erred in finding that plaintiff's ability to work during the early stages of his disease meant that he could continue to sustain full-time work after his illness worsened. The record also establishes that plaintiff was ultimately unsuccessful in his attempts to return to work, and the Magistrate Judge properly noted that plaintiff's attempts at employment were misinterpreted by the ALJ.

Finally, regardless of how counsel wishes to construe the "theories" posited by plaintiffs representative to the ALJ, the Magistrate Judge correctly concluded that the evidence before the ALJ supported a finding that plaintiff should have been found to meet the legal requirements of a Listing at step three of the Commissioner's analysis. The Magistrate Judge's well-reasoned analysis in this regard need not be reiterated.

Having carefully reviewed the Findings and Recommendation, the objections, and the entire record, this court concludes that the Findings and Recommendation is legally sound and worthy of adoption in its entirety. A fair and full evaluation of the record compels the conclusion that the ALJ would be required to find this plaintiff disabled. This case must be remanded for an award of benefits.

## CONCLUSION

The court adopts the Findings and Recommendation [21]. For the reasons set forth above and in the accompanying Findings and Recommendation, the final decision of the Commissioner denying plaintiff Lynn Carlson's application for benefits is REVERSED and REMANDED for an award of benefits.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

STEWART, United States Magistrate Judge:

Plaintiff, Lynn Carlson ("Carlson"), seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 USC §§ 405(g) and 1383(c).

For the following reasons, the Commissioner's decision should be REVERSED and this case REMANDED for the immediate calculation and award of benefits.

### PROCEDURAL BACKGROUND

Born in 1952 (Tr. 99), Carlson has a twelfth-grade education. Tr. 118.[1] He worked as a software developer from 1967

---

1. Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on February 17, 2009 (docket # 6).

through 1997 when he quit his job. Tr. 27–28, 125–27. Carlson applied for DIB on February 17, 2006 (Tr. 99–103), alleging disability since September 9, 2002 (Tr. 14), due to arthritis, specifically ankylosing spondylitis[2] and related complications. Tr. 113. Carlson was 50 years old on his alleged onset date, and his date last insured for DIB was December 31, 2003. Tr. 14.

The Commissioner denied Carlson's application initially and upon reconsideration. Tr. 66–77. An Administrative Law Judge ("ALJ") held a hearing on December 18, 2007 (Tr. 25–64, 685–87), and subsequently found Carlson not disabled in a decision dated March 14, 2008. Tr. 14–24. The Appeals Council denied review of the ALJ's decision on August 12, 2008, making the ALJ's decision the final decision of the Commissioner. Tr. 1–4.

### BACKGROUND

The record covers Carlson's treatment between May 9, 1997, and January 7, 2008. During this time, physicians followed Carlson's ankylosing spondylitis, noting an approximate 30–year history of this disease. Tr. 48, 231, 487–90, 492, 499, 504–05, 507–09, 586–604. Rheumatologists Drs. Levin, Basin, and Dryland treated Carlson between January 11, 2006, and March 21, 2007. Tr. 586–604. At the initial visit, they stated that Carlson experienced onset of the disease at age 24 (in approximately 1976) and received a diagnosis "eight years later" (in approximately 1984). Tr. 599.

They also stated that Carlson was treated with daily non-steroidal anti-inflammatory drugs (NSAIDs) for the preceding ten years, and experienced a gradual decrease in the range of motion of his axial skeleton, as well as recurrent iritis,[3] and episodes of chest wall pain that were so severe they resulted in nausea and vomiting. *Id.* Additionally, they stated that Carlson has "some degree of pain" most days, that his morning stiffness associated with his ankylosing spondylitis last several hours. *Id.* Finally, they stated that Carlson reported swollen joints and functional limitations, including an inability to turn his head, bend over, walk without a cane, such that "currently most any movement" causes pain. *Id.* Drs. Basin, Dryland, and Levin consequently diagnosed advanced ankylosing spondylitis. Tr. 601.

Dr. Levin's review of concurrent X-rays found that Carlson's cervical spine showed "very abnormal" vertebral alignment, with "diffuse anterior syndesmophytes and straightening of cervical lordosis" and "appears to have fused relatively straight." Tr. 602. Carlson's thoracic spine showed scattered syndesmophytes and severe narrowing of multiple disc spaces, but no fusion. *Id.* Finally, his lumbar spine had severe syndesmophytes with fusion at L5–S1 and fusion of both sacroiliac joints. *Id.* On the basis of these X-rays, Dr. Levin diagnosed "severe ankylosing spondylitis," with "severe" hip involvement, as well as osteoporosis. *Id.*

**2.** Ankylosing spondylitis is a "chronic inflammatory disease of unknown origin, first affecting the spine and adjacent structures and commonly progressing to eventual fusion (ankylosis) of the involved joints." Kenneth N. Anderson *et al, Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998). Ankylosing spondylitis also commonly affects the joints of the hip, shoulder, neck, ribs, and jaw, and is a systemic disease which often affects the eyes and heart. Many patients also have inflammatory bowel disease. *Id.*

**3.** Iritis is "an inflammatory condition of the eye characterized by pain, lacrimation, photophobia, and, if severe, diminished visual acuity." Kenneth N. Anderson *et al, Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

### DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 CFR § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 CFR §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 CFR § 404.1520(e), Social Security Ruling ("SSR") 96–8p (available at 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 CFR § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142, 107 S.Ct. 2287; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 CFR §§ 404.1520(a)(4)(v); 404.1520(f). If the claimant cannot perform such work, he is disabled. *Id.*

■ The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 CFR § 404.1520(g).

### THE ALJ'S FINDINGS

At step two, the ALJ found that Carlson had impairments:

> some of which arose or worsened after the date last insured: ankylosing spondylitis; hypertension; history of alcoholic pancreatitis; history of gastrointestinal bleeding with ulcers and crisis in January 2006; status post stomach resection (complicated in cardiac arrest and malnutrition); and history of alcoholic dependence.

Tr. 16.

At step three, the ALJ found that these impairments did not meet a listed disorder and that Carlson was "not credible to the extent [his statements] are inconsistent with the [RFC] assessment." Tr. 19. The ALJ found that Carlson's RFC through his last insured date of December 31, 2003, enabled him to "lift or carry 10 pounds

frequently and 20 pounds occasionally and required the occasional opportunity to change positions." Tr. 17.

At step four, the ALJ found that Carlson could perform his past relevant work as a software specialist through his date last insured. Tr. 23. The ALJ also found that Carlson could perform work in the national economy as a customer service representative at step five. Tr. 24. Therefore, the ALJ found Carlson not disabled under the Commissioner's regulations at any time prior to his December 31, 2003, date last insured.

### STANDARD OF REVIEW

■ The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts" from the ALJ's conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record. *Magallanes*, 881 F.2d at 750; *see* also *Batson*, 359 F.3d at 1193.

### FINDINGS

Carlson challenges the ALJ's evaluation of the medical evidence, his testimony, and his wife's testimony He also alleges that he met the Commissioner's Listing for ankylosing spondylitis prior to his date last insured.

### I. *Evaluating Onset in Disabilities of Non–Traumatic Origin*

This case primarily concerns whether Carlson's ankylosing spondylitis became disabling before his December 31, 2003, date last insured. The ALJ found that the medical evidence did not show that this condition was disabling before that date. Tr. 24.

The Commissioner has issued specific instructions to an ALJ concerning the gradual onset of an impairment stemming from non-traumatic origins. SSR 83–20 at *2 (available at 1983 WL 31249). "Factors relevant to the determination of disability onset include the individual's allegations, the work history, and the medical evidence." *Id.* at *1. "Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (*i.e.* to be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began." *Id.* When inferring the onset date of a progressive disease:

> the available medical evidence should be considered in view of the nature of the impairment (*i.e.* what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to concluded from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

*Id.* at *3.

"Reports containing observations made after the period for disability are relevant to assess the claimant's disability," including "medical evaluations made after the

expiration of a claimant's insured status." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988).

The ALJ failed to acknowledge or apply these instructions. This omission is clearly erroneous for the reasons explained below.

## II. *Carlson's Credibility*

### A. *Legal Standard*

The Commissioner's regulations instruct the ALJ to evaluate a claimant's symptoms, including pain. 20 CFR § 404.1529. The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 CFR § 404.1529(a). Here the ALJ considers a claimant's statements regarding his symptoms, but they must be accompanied by medical signs and laboratory findings. *Id.*

■■■ Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007), citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.1995), citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir.1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006).

### B. *Analysis*

Carlson specifically alleges that the ALJ erred in finding him not credible by requiring him to produce medical evidence corroborating the severity of his impairments and by citing his work history.

#### 1. *Medical Evidence and Symptom Testimony*

■■■ The ALJ found Carlson's symptom testimony "substantiated by treatment records of the last couple of years," but that "treatment records issued contemporaneously during the relevant period fail to document [Carlson's] allegations that he had persisting, limiting, or frequent affects [sic] caused by his ankylosing spondylitis." Tr. 23.

■■■ The claimant must show that his impairment "*could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1284 (emphasis original). Once a claimant establishes an impairment that could reasonably cause the reported symptoms, the ALJ may not require that medical evidence corroborates the degree of symptom testimony the claimant proffers. *Lingenfelter*, 504 F.3d at 1036, citing *Smolen*, 80 F.3d at 1282. However, the ALJ may consider a claimant's medical record in conjunction with other credibility factors, including a physician's observations. *Smolen*, 80 F.3d at 1282, 1284.

The medical record establishes that Carlson has had ankylosing spondylitis for at least 30 years. Tr. 586. Pursuant to this diagnosis, Carlson could reasonably be expected to experience both pain and limited movement due to the associated inflammatory arthritis and consequential spinal fusion. Tr. 173–81, 658, 677. Carlson therefore meets the first prong of the two-step credibility analysis. The ALJ may not subsequently require that the medical record support the degree of symptom testimony that Carlson alleges.

This analysis extends to progressive impairments. For "slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (*i.e.* be decided on medical grounds alone) before onset can be established." SSR 83–20 at *2. Therefore, the ALJ may not chastise Carlson for failing to report disabling symptoms prior to his alleged onset date or his date last insured.

The Commissioner asserts that Carlson's symptom testimony is unsupported by the medical record because the ALJ may consider medical reports of improvement and minimal treatment in evaluating a claimant's credibility. However, the ALJ made no such finding, and the reviewing court may not rely upon reasoning the ALJ did not assert. *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir.2003), citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

Other authorities relied on by the Commissioner also are inapplicable. He first cites *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999), for the proposition that the ALJ may find a claimant not credible because medical records showed improvement, in contrast to the claimant's testimony. This reasoning does not apply here. The medical record shows no improvement of Carlson's ankylosing spondylitis and does not contrast

with Carlson's testimony. Second, the Commissioner discusses minimal over-the-counter NSAID treatment for unspecified back pain where the claimant had "very minimal joint space narrowing" and otherwise normal tests. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir.1998). This reasoning is inapplicable here where the record shows "very abnormal" spinal pathology (Tr. 602) and prolonged prescription-strength NSAID use (Tr. 36–37, 586, 588, 593, 599), which caused extensive gastrointestinal complications. Tr. 37, 599.

While consistent symptom reporting may bolster a claimant's credibility, "symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time . . ." SSR 96–7p at *5 (available at 1996 WL 374186). In such a setting, symptom-free periods may be consistent with disability. *Reddick v. Chater,* 157 F.3d 715, 724 (9th Cir.1998), citing *Lester v. Chater,* 81 F.3d 821, 833 (9th Cir.1995). The Commissioner's submission that Carlson's testimony should be rejected because he did not report disabling symptoms to every physician that examined him throughout the relevant period therefore fails.

For all of these reasons, the ALJ erroneously found that Carlson's medical record did not corroborate his symptom testimony.

### 2. *Work History and Credibility*

The ALJ noted that Carlson has not worked since 1997 "due to arthritis." Tr. 18. The ALJ also stated that, "while the record supports that the claimant has a 30 year history of ankylosing spondylitis and has been prescribed NSAIDs, the claimant also worked full time for many years after the diagnosis was made." Tr. 19. The ALJ thus inferred that Carlson stopped working for reasons unrelated to his ankylosing spondylitis. Carlson asserts that

the ALJ did not consider his work history in light of the fact that his disease was progressive.

■ The ALJ may consider a claimant's poor work history in finding a claimant not credible. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir.2002). However, an ALJ may not criticize a claimant for attempting to work despite a disabling condition. *See Lingenfelter,* 504 F.3d at 1038 (finding a failed work attempt insufficient to discredit claimant). Thus, the ALJ erred by inferring that Carlson's work history undermines his allegation of disability.

■ Additionally, the ALJ's reasoning regarding Carlson's work history erroneously omitted consideration that his disease is progressive. In the context of progressive impairments, a claimant's work history "is frequently of great significance in selecting the proper onset date." SSR 83–20 at *2. Carlson testified that he ceased working on December 31, 1997, due to increasing pain, fatigue, stiffness, and limited mobility stemming from his ankylosing spondylitis. Tr. 28–29. The ALJ erred in failing to consider his onset date in light of this testimony.

Therefore, the ALJ erred by relying on Carlson's work history in his finding Carlson not credible regarding his symptoms before December 31, 2003.

### 3. *Credibility and RFC Evaluation*

■ Finally, the ALJ's analysis reverses the manner in which he must consider credibility. The ALJ must consider a claimant's credibility in the course of assessing a claimant's RFC. 20 CFR § 416.945(a)(3); SSR 96–8p at *7. Here, the ALJ first found Carlson's testimony "not credible to the extent" his statements "are inconsistent with the" RFC. Tr. 19. No authority suggests an ALJ may reason that a claimant is not credible based upon

the claimant's RFC assessment. Thus, the ALJ's finding that Carlson is not credible based upon his RFC disregards the role of credibility analysis in determining an RFC.

In summary, the ALJ's credibility finding should not be sustained.

### III. *Medical Evidence*

#### A. *Legal Standard*

■ Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester,* 81 F.3d at 830. The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Furthermore, disability opinions are reserved for the Commissioner. 20 CFR § 404.1527(e)(1).

#### B. *Analysis*

■ The ALJ found that no medical evidence supported Carlson's claim that he had "regular complaints of his ankylosing spondylitis from the amended onset date to his date last insured." Tr. 19. The ALJ subsequently discussed records produced by treating physicians Drs. Groenhout and Pratt. Tr. 19–20. The ALJ also cited Carlson's February 2006 hospitalization. Tr. 21. The ALJ cited the May 4, 2006 chart note of treating rheumatologist Dr. Levin (Tr. 18), but omitted any further discussion of of treatment by rheumatologists Drs. Basin, Dryland, and Levin. The ALJ's discussion of Carlson's 2006 and

2007 medical records does not cite the opinions of Drs. Basin, Dryland, and Levin at all. Tr. 21–22.

 The ALJ must ordinarily give greater weight to opinions rendered by both treating physicians and specialists. 20 CFR § 404.1527(d)(2) and (5). While the ALJ is not required to discuss every piece of evidence, he may not omit evidence that is significant or probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003). This court may only find such omissions harmless where they are "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). Drs. Basin, Dryland, and Levin are the only treating rheumatologists of record and the only specialists who addressed Carlson's ankylosing spondylitis. Their opinions establish disability as discussed below. The ALJ's omission is, therefore. erroneous.

 The court additionally notes that Drs. Basin, Dryland, and Levin, jointly signed nearly all of their chart notes. Tr. 587, 589, 591, 593, 596, 601. Nurse Practitioner Pethtel also signed their notes. *Id.* Any distinction regarding whether these notes were signed by a physician or a nurse practitioner is insignificant because the ALJ must consider a nurse practitioner working under the supervision of a physician as an acceptable medical source. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996).

## IV. *Lay Testimony*

### A. *Legal Standard*

 The ALJ has a duty to consider lay witness testimony. 20 CFR §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

### B. *Analysis*

 The ALJ stated that "there are no third party statements for review" and rejected testimony submitted by Carlson's wife, Linda Carlson, because "the medical evidence does not support that the claimant had persisting or incapacitating affects [sic] of his back condition during the relevant time period." Tr. 23.

This analysis again fails to account for the Commissioner's specific instructions that where precise medical documentation is unavailable, "information may be obtained from family members, friends, and former employers to ascertain why the medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." SSR 83–20 at *3. However, "the impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record." *Id.*

Linda Carlson has been married to Carlson for over 30 years and has been a daily witness to the increasingly limiting effects of Carlson's impairments. She testified that Carlson stopped working in December 1997 because "his legs were giving him problems, his back, his neck, he couldn't move. And focus was a big thing, he couldn't focus on what he was doing at work." Tr. 57. Carlson persisted in going to his job until 1997 out of sheer determi-

nation not to take government handouts. Tr. 185–86. He worked short days, slept on the floor or at his desk during his lunch hour, and doggedly tried to keep working, but eventually succumbed to the pain, tiredness, and other physical restrictions imposed by the his progressive condition. Tr. 36, 185–86.

Linda Carlson gave a detailed account of the limitations imposed on Carlson as a result of his ankylosing spondylitis. Since well before his date last insured, Carlson has been unable to perform the most mundane and physically undemanding of household tasks without "paying" for doing so with several days of extreme pain and fatigue. Tr. 187. His painful and time-consuming entries and exits from his bed necessitated sleeping alone and kept him fatigued during his waking hours, exacerbating his pain and physical infirmity. Tr. 183–84.

Carlson lost more than seven inches in stature, walked with a walker for months at a time, and routinely took pain medication at levels expected for a woman in active labor or for a burn victim. Tr. 195. The pain medications in turn upset Carlson's gastrointestinal tract, made him have to use the bathroom constantly, and eventually landed him in the hospital due to internal bleeding. Tr. 183. Reeling from the heavy burdens this places on him, Carlson has often confided in his wife that he wished he could die to make the pain go away. *Id.* Carlson has attempted to keep an upbeat, positive attitude despite these profound difficulties, "tries very hard not to be a victim," and "rallies to have an upbeat attitude when dealing with people such as doctors." Tr. 184. He tries to be positive and do what he can to be useful. *Id.* Focused on remaining independent rather than applying for disability benefits, he downplayed his limitations to medical providers, trying instead to focus on the positive. *Id.*

Carlson is restricted to performing all activities at an extremely slow pace and must avoid any activities that might jar his back and joints, including sports, bicycle riding, and riding as a passenger in cars (if he drives he can better avoid any bumps and knows when to expect the jolts). Tr. 187. The pain and related sleep deprivation caused Carlson to be unable to concentrate and interfered with his short term memory. Tr. 186. He gave up reading, shies away from social activities because he does not want to deal with people, and rarely leaves the house except to go to doctors' appointments. Tr. 187–88. He cannot bathe in a bathtub because he would not be able to get out, and must move his entire body to do such things as look up into cupboards and check for cross-traffic while driving. *Id.* He is unable to carry anything into the house after grocery shopping other than a few light sacks, cannot lift the garbage can to take it to the end of the lane, and has difficulty picking up anything he drops. *Id.* According to his wife, Carlson's condition has been substantially the same for the past nine or ten years and he has coped as best he can, all the while knowing that the progressive effects of ankylosing spondylitis are a "given" in his life. Tr. 58, 184.

■ Linda Carlson's testimony and written statement are not inconsistent with the medical evidence, much of which is missing during the critical time due to no fault of Carlson. Linda Carlson was unquestionably in the best position to observe the effects of Carlson's impairments during the relevant time. She has watched helplessly as he "lost his youth," struggled to maintain his employment and later to remain useful in the home, and battled with associated depression. Tr. 183. While the ALJ may reject lay testi-

mony inconsistent with the medical evidence, *Lewis*, 236 F.3d at 512, the ALJ may not require that medical evidence corroborate the severity of a claimant's symptoms as described by lay evidence. *Smolen*, 80 F.3d at 1299–89. Such a requirement also circumvents SSR 83–20. By imposing that requirement on Linda Carlson's testimony, the ALJ erred.

## V. *The ALJ's Step Three Findings*

The ALJ stated that Carlson's representative "indicated in a letter dated December 18, 2007, that the claimant's current condition of ankylosing spondylitis, likely meets a listing related to the musculoskeletal system," namely Listing 1.04. Tr. 17. The ALJ found that Carlson did not meet this listing. *Id.* The ALJ also found, without discussion, that Carlson did not meet Listing 4.00, regarding the cardiovascular system, or Listing 5.00, regarding the digestive system. *Id.* Finally, the ALJ found that Carlson showed no functional limitations associated with his alcohol dependence under Listing 12.09, which addresses substance addiction disorders. *Id.*

 The ALJ did not consider whether Carlson met Listing 14.09B which specifically addresses ankylosing spondylitis. This is a significant omission. If the omission is consequential to a finding of disability, the error is not harmless. *Carmickle*, 533 F.3d at 1162. As discussed below, this omission is not harmless.

## VI. *Remand*

 The immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). The issue turns on the utility of further proceedings.

 the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178, quoting *Smolen*, 80 F.3d at 1292. In such circumstances, the reviewing court must credit the improperly rejected evidence. *Vasquez v. Astrue*, 547 F.3d 1101, 1106–07 (9th Cir.2008), *en banc review denied*, 572 F.3d 586 (9th Cir.2009).

With respect to the first factor, the ALJ failed to properly evaluate the opinions of treating rheumatologists Drs. Baslin, Dryland, and Levin, and the testimony of Carlson and his wife. With respect to the second factor whether any outstanding issues remain, Carlson testified that his medical records pertaining to the period prior to 1997 have been lost. Tr. 191. Because further development would serve no purpose, the record is sufficiently developed.

The last factor under *Harman* requires the court to determine whether the record clearly requires award of benefits after the improperly rejected evidence is credited. Here the record clearly shows that if the opinions of the treating rheumatologists and the testimony by Carlson and his wife are credited, then Carlson is disabled at step three because he meets a "listed disorder." 20 CFR §§ 404.1520(a)(4)(iii), 404.1520(d).

The regulations effective at the time of the ALJ's decision specifically cite ankylosing spondylitis in the "Autoimmune Disorders" Listing 14.09 for "Inflammatory Arthritis" as follows:

14.09 Inflammatory arthritis. Documented as described in 14.00B6, with one of the following:

A. History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c; or

B. **Ankylosing spondylitis** or other spondyloarthropathy, with diagnosis established by findings of unilateral or bilateral sacroiliitis (e.g., erosions or fusions), shown by appropriate medically acceptable imaging, with both:

1. History of back pain, tenderness, and stiffness, and

2. Findings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45° or more of flexion measured from the vertical position (zero degrees);

or

C. An impairment as described under the criteria in 14.02A.

or

D. Inflammatory arthritis, with signs of peripheral joint inflammation on current examination, but with lesser joint involvement than in A and lesser extra-articular features than in C, and:

1. Significant, documented constitutional symptoms and signs (e.g., fatigue, fever, malaise, weight loss), and

2. Involvement of two or more organs/body systems (see 14.00B6d). At least one of the organs/body systems must be involved to at least a moderate level of severity.

or

E. Inflammatory spondylitis or other inflammatory spondyloarthropathies, with lesser deformity than in B and lesser extra-articular features than in C, with signs of unilateral or bilateral sacroiliitis on appropriate medically acceptable imaging; and with the extra-articular features described in 14.09D.

20 CFR Pt. 404, Subpt. P, App. 1 § 14.09B (effective Dec. 18, 2007–May 29, 2008) (emphasis added).

Listing 14.09B first requires a diagnosis of ankylosing spondylitis "established by findings of unilateral or bilateral sacrolitis (*e.g.* erosions or fusions), shown by appropriate medically acceptable imaging." *Id.* This requirement is met by Dr. Levin's January 11, 2006, opinion interpreting X-rays showing that Carlson had fusion of the sacroiliac joint. Tr. 602.

Second, Listing 14.09B requires a "[h]istory of back pain, tenderness and stiffness." Carlson's testimony and medical records clearly establish that history. Tr. 6–9, 12, 20–26. 586–604.

Finally, Listing 14.09B requires "[f]indings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45° *or more* flexion measured from the vertical position (zero degrees)" (emphasis added). On January 11, 2006, Drs. Basin, Dryland, and Levin found that Carlson's lumbar spine "can flex 60–70 deg[rees] but much of this is pelvic motion." Tr. 600. These findings establish that Carlson's lumbar spine was restricted to greater than 45 degrees of motion. Crediting the opinions of Drs. Basin, Dryland, and Levin shows that Carlson met the relevant Listing for ankylosing spondylitis as of January 11, 2006.

With respect to the relevant time period, Dr. Levin also stated that he and his partners believed that Carlson's "advanced, deforming, disabling disease with significant functional limitations" was "evident during '02–'03.'" Tr. 172. This indicates that Carlson met the Listing prior to December

31, 2003. In addition, both Carlson and his wife testified that his condition was essentially unchanged between approximately five to eight years ago (1999–2002) and the date of his hearing before the ALJ. Tr. 20, 36. Crediting their testimony therefore establishes that Carlson met Listing 14.09B well before his December 31, 2003, date last insured. This analysis is consistent with the instructions issued in SSR 83–20 regarding impairments of gradual onset. Consequently, Carlson is disabled under the Commissioner's Listing and regulations at step three in the sequential proceedings.

 The reviewing court may not order award of benefits in a manner that is inconsistent with the Commissioner's regulations. *See Vasquez,* 572 F.3d at 589. The regulations limit award of benefits where a claimant's substance abuse contributed to his disabling condition. 20 CFR § 404.1535. The record contains some evidence as to alleged alcohol abuse by Carlson. Tr. 33, 38. However, nothing in the record indicates that any such alcohol abuse contributed to the progression of his ankylosing spondylitis. Because no relevant issues remain regarding contributory effects of alcohol use upon his disability, Carlson remains disabled despite any alleged substance abuse.

### RECOMMENDATION

The ALJ's decision is not based upon the appropriate legal standards or substantial evidence. Crediting the improperly assessed testimony establishes that Carlson is disabled under Title II of the Act. The ALJ's decision should therefore be reversed and remanded for the immediate calculation and award of benefits.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objec-

tions, if any, are due December 29, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.